*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellant

**v.**

**Zachary C. ROCHA, Airman**
United States Air Force, Appellee

**No. 25-0157**
Crim. App. No. 40134

Argued October 22, 2025—Decided March 16, 2026

Military Judge: Colin P. Eichenberger

For Appellant: *Major Kate E. Lee* (argued); *Colonel Matthew D. Talcott*, *Lieutenant Colonel Jenny A. Liabenow*, and *Mary Ellen Payne*, Esq. (on brief).

For Appellee: *Major Megan R. Crouch* (argued); *Megan P. Marinos*, Esq.

Amicus Curiae: *Philip D. Cave*, Esq., *Brenner M. Fissell*, Esq., and *Franklin D. Rosenblatt*, Esq. (on behalf of the National Institute of Military Justice) (on brief).

Judge HARDY announced the judgment of the Court and the opinion of the Court with respect to Part IV, in which Judge MAGGS and Judge JOHNSON joined. Judge HARDY also delivered an opinion with respect to Parts I through III, in which Judge JOHNSON joined. Judge MAGGS filed a separate opinion concurring in part and in the judgment. Chief Judge OHLSON filed a separate dissenting opinion, in which Judge SPARKS joined.

———————

Judge HARDY delivered the opinion of the Court.

A general court-martial convicted Appellee of violating the General Article, Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2018), for committing indecent conduct by "engaging in sexual acts with a sex doll with the physical characteristics of a female child." In a previous case, this Court held that "the presidentially enumerated elements and definitions of Article 134 provide fair notice to servicemembers of ordinary intelligence that engaging in sexual acts with a lifelike child sex doll falls squarely within the President's definition of indecent conduct." *United States v. Rocha* (*Rocha II*), 84 M.J. 346, 352 (C.A.A.F. 2024).[1] We then remanded the case to the United States Air Force Court of Criminal Appeals (AFCCA) for consideration of the remaining issues raised by Appellee, including Appellee's claim that he had a constitutionally protected right under *Lawrence v. Texas*, 539 U.S. 558 (2003), to engage in the charged conduct. *Id.*

On remand, the AFCCA held that Appellee had a "constitutionally protected liberty interest to privately engage in sexual activities with *his doll*." *United States v. Rocha* (*Rocha III*), No. ACM 40134 (rem), 2025 CCA LEXIS 10, at *4, 2025 WL 211261, at *2 (A.F. Ct. Crim. App. Jan. 15, 2025) (unpublished) (emphasis added). The AFCCA also found Appellee's conviction factually insufficient, stating that it was "not convinced of [Appellee's] guilt beyond a reasonable doubt." *Id.* at *30, 2025 WL 211261, at *12. Accordingly, the AFCCA set aside the findings and dismissed the specification with prejudice. *Id.* at *30-31, 2025 WL 211261, at *12.

---

[1] In *Rocha II*, we reviewed the lower court's opinion setting aside the findings and sentence and dismissing the charge and specification with prejudice. *See United States v. Rocha* (*Rocha I*), No. ACM 40134, 2022 CCA LEXIS 725, 2022 WL 17730741 (A.F. Ct. Crim. App. Dec. 16, 2022) (unpublished).

After the AFCCA issued its second opinion, The Judge Advocate General of the Air Force (TJAG) certified the case back to this Court, specifying two issues:

> I. Did the Air Force Court of Criminal Appeals fail to follow this Court's remand instruction by analyzing the purported *Lawrence v. Texas*, 539 U.S. 558 (2003), liberty interest as "masturbation in solitude, in secret, and in private," instead of "privately engag[ing] in sexual activity with a child-like sex doll"?

> II. Did the Air Force Court of Criminal Appeals err in its application of *Lawrence v. Texas*, 539 U.S. 558 (2003) and *United States v. Marcum*, 60 M.J. 198 (C.A.A.F. 2004) to find Appellee's conviction factually insufficient?

For the reasons explained below, we answer both certified questions in the negative and affirm the decision of the AFCCA.

## I. Background

During a morale and welfare inspection, a sergeant found a short, anatomically correct, silicone doll with female physical characteristics in Appellee's barracks dorm room. Appellee's first sergeant described the doll as "very life like," and an agent from the Air Force Office of Special Investigations (AFOSI) stated that the doll "kind of looked like a child." During an interview with two AFOSI agents, Appellee agreed that the doll looked like a child and admitted to owning "basically what is a child sex doll." Appellee further admitted to masturbating by penetrating the doll's vaginal and anal orifices with his penis on three occasions. Appellee clarified, however, that he never ejaculated in the doll because "it got too real." Appellee explained: "I thought to myself, what if this was a life, what if this was real, and, yeah, it's sad, so I stopped."

When an agent asked whether there was ever a time when Appellee pictured the doll "as being a real child and enjoyed it for any amount of time," Appellee responded "No." Asked the question a second time, Appellee again

3

responded, "Real as in like real child, somebody's daughter. No. No."

As relevant here, the Government charged Appellee with one specification of violating Article 134, UCMJ, for committing indecent conduct by "engaging in sexual acts with a sex doll with the physical characteristics of a female child, and that said conduct was of a nature to bring discredit upon the armed forces."[2] A general court-martial composed of officer members convicted Appellee, contrary to his pleas, of one specification of indecent conduct in violation of Article 134, UCMJ. The military judge sentenced Appellee to a bad-conduct discharge, ninety days of confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1.

On appeal before the AFCCA, Appellee raised numerous challenges to his conviction. Concluding that Appellee "did not have fair notice that his alleged conduct was punishable as indecent conduct" under Article 134, UCMJ, the AFCCA set aside the findings and sentence and dismissed the charge and specification with prejudice. *Rocha I*, 2022 CCA LEXIS 725, at *19, 2022 WL 17730741, at *8. The AFCCA did not address Appellee's other claims, including whether his conduct was constitutionally protected.

Exercising his authority under Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2), TJAG certified the AFCCA's decision to this Court, and we reversed and remanded, finding that the presidentially enumerated Article 134 offense of indecent conduct *did* "provide fair notice that Appellee's conduct was criminally sanctionable." *Rocha II*, 84 M.J. at 352. On remand, we instructed the AFCCA to do two things: (1) "determine whether Appellee had a constitutionally protected liberty interest under *Lawrence v. Texas* . . . to privately engage in sexual activity with a childlike sex doll;" and (2) "address any other issues previously raised

---

[2] The Government also charged Appellee with an unrelated specification of receiving child pornography in violation of Article 134, UCMJ. The members acquitted Appellee of that specification.

by Appellee before the United States Air Force Court of
Criminal Appeals that were mooted by the lower court's
prior decision to overturn the conviction." *Id.*

As to this Court's first instruction, the AFCCA found
that Appellee had a "constitutionally protected liberty in-
terest to privately engage in sexual activities with *his doll.*"
*Rocha III*, 2025 CCA LEXIS 10, at \*4, 2025 WL 211261, at
\*2 (emphasis added).[3] And as to this Court's second in-
struction, the AFCCA found Appellee's conviction factually
insufficient, stating that it was "not convinced of [Appel-
lee's] guilt beyond a reasonable doubt." *Id.* at \*30, 2025 WL
211261, at \*12.

After the AFCCA issued its second opinion, TJAG certi-
fied this case back to this Court for a second time, specify-
ing the two issues listed above. The Government argues
that both questions should be answered in the affirmative
because the AFCCA erred in two ways. First, the Govern-
ment argues that the AFCCA failed to adhere to our man-
date on remand by mischaracterizing the purported liberty
interest in question as "masturbation in private and in sol-
itude" rather than to "privately engage in sexual activity
with a childlike sex doll." Second, the Government argues
that the AFCCA erred in its factual sufficiency analysis by
misapplying this Court's precedent in *United States v.
Marcum*, 60 M.J. 198 (C.A.A.F. 2004). We address each ar-
gument in turn.

---

[3] In reaching this conclusion, the AFCCA stated that they
"echo Judge Johnson's conclusion [in *Rocha II*] about the consti-
tutionally protected liberty interest in this case." *Rocha III*, 2025
CCA LEXIS 10, at \*19 n.13, 2025 WL 211261, at \*7 n.13. The
AFCCA concurred with Judge Johnson that "Appellee's private,
sexual conduct with an inanimate object in his single-occupancy
dorm room in a military barracks was constitutionally protected
conduct, in a place deserving of constitutional protection." *Id.*,
2025 WL 211261, at \*7 n.13 (internal quotation marks omitted)
(quoting *Rocha II*, 84 M.J. at 358 (Johnson, J., dissenting)).

## II. Standard of Review

"Only the court issuing [a remand] order can ultimately decide if its order has been complied with." *United States v. Hawkins*, 11 M.J. 4, 6 (C.M.A. 1981). Accordingly, we review the question whether the AFCCA complied with this Court's remand order de novo.

Under the version of Article 66, UCMJ, 10 U.S.C. § 866, applicable to Appellee's case,[4] the AFCCA has an "awesome, plenary, de novo power" to complete its own factual sufficiency review. *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990). In exercising this power, the AFCCA must weigh the evidence in the record of trial, making allowances for not having personally observed the witnesses, and then determine whether they "are themselves convinced of the accused's guilt beyond a reasonable doubt." *United States v. Thompson*, 83 M.J. 1, 4 (C.A.A.F. 2022) (internal quotation marks omitted) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.A.A.F. 1987)). This Court lacks the authority to make its own findings of fact or to conduct its own factual sufficiency review, but "we retain the authority to review factual sufficiency determinations of the CCAs for the application of 'correct legal principles,' but only as to matters of law." *Id.* (internal quotation marks omitted) (quoting *United States v. Clark*, 75 M.J. 298, 300 (C.A.A.F. 2016)).

## III. The AFCCA Complied with the Remand Order

At every stage of this case, Appellee has challenged his conviction on the grounds that he had a constitutionally protected liberty interest to engage in the charged conduct under the Supreme Court's decision in *Lawrence*. Because the AFCCA set aside the findings of guilt and sentence on other grounds in its first decision, the AFCCA had not

---

[4] Congress amended Article 66, UCMJ, in the National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, § 539E(d), 135 Stat. 1541, 1703 (2021). Those amendments do not apply to this case because Appellee's offense occurred prior to December 27, 2023, the effective date of those amendments. *Id.* § 539E(f), 135 Stat. 1541, 1706.

addressed Appellee's constitutional claim when TJAG certified this case to this Court the first time. We therefore remanded the case back to the AFCCA so that it could determine—in the first instance—whether Appellee's conduct was constitutionally protected.

On remand, the AFCCA concluded that Appellee's conduct was protected under *Lawrence*, but the Government argues that the AFCCA erred in that conclusion because it deviated from this Court's remand mandate by analyzing a different question than the one we ordered it to consider. The Government points to two aspects of the AFCCA's second opinion in support of its argument. First, the Government notes the apparent disagreement between this Court and the AFCCA about whether Appellee's doll qualifies as "childlike." Second, the Government asserts that the AFCCA erred by mischaracterizing Appellee's conduct as "masturbation, in solitude, in secret, and in private living quarters," which is materially different than this Court's order to "determine whether Appellee had a constitutionally protected liberty interest . . . to privately engage in sexual activity with a childlike sex doll." We are not convinced that these issues—either alone or in combination—justify a second remand to the AFCCA.

With respect to the Government's first point, we do not find the AFCCA's resistance to this Court's description of Appellee's doll as "childlike" to be legally meaningful.[5] The record contains multiple photographs of the doll as well as firsthand descriptions of the doll from various witnesses. The AFCCA repeatedly noted in both of its opinions that multiple witnesses believed that the doll resembled a child, that Appellee admitted that it was basically "a child sex doll," and that the panel found Appellee guilty of "engaging in sexual acts with a sex doll with the physical

---

[5] The AFCCA expressly declined to decide whether or not the sex doll was "childlike," but never disputed the language in the specification—that the doll had "the physical characteristics of a female child." *Rocha III*, 2025 CCA LEXIS 10, at *7-8, 2025 WL 211261, at *3.

characteristics of a female child." Whether or not the AFCCA agrees that Appellee's doll was "childlike" (a subjective designation that carries no specific legal significance in this case), we have no doubt that the AFCCA had an accurate understanding of the doll's objective appearance.

As to the Government's second point, we agree that a remand would be necessary *if* the AFCCA had failed to comply with our remand order. And we also agree that the question whether a servicemember has a constitutional right to "masturbat[e], in solitude, in secret, and in private living quarters" is a materially different one from whether a servicemember has a right to engage in sexual activity with a childlike sex doll. Nevertheless, when examining the AFCCA's second decision in full, we believe that the AFCCA answered the most critical question asked by this Court on remand: whether Appellee had a constitutional right to engage in the specific conduct with which he was charged and convicted. The AFCCA answered that question when it stated: "We find [Appellee] had a constitutionally protected liberty interest to privately engage in sexual activities with *his doll*." *Rocha III*, 2025 CCA LEXIS 10, at *4, 2025 WL 211261, at *2 (emphasis added); *see also id.* at *17, 2025 WL 211261, at *7 (concluding that Appellee's conduct was constitutionally protected even considering the "ostensibly childlike appearance of the doll"). Accordingly, we conclude that the AFCCA complied with this Court's remand order.

### IV. Factual Insufficiency Due to No Aggravating Circumstance

The Government charged Appellee with indecent conduct under Article 134, UCMJ. This Court has long held that private consensual sexual activity is not punishable under Article 134, UCMJ, as an indecent act absent aggravating circumstances. *United States v. Goings*, 72 M.J. 202, 205 (C.A.A.F. 2013); *see also United States v. Snyder*, 1 C.M.A. 423, 426, 4 C.M.R. 15, 18 (1952) (noting that Article 134, UCMJ, "is not intended to set up a moral standard for the conduct of an individual's affairs in private—

provided, at least, that the questioned conduct does not interfere with the performance of military duties").[6] Thus, to secure a conviction in this case, the Government was required to establish the existence of at least one aggravating circumstance. The presence or absence of an aggravating circumstance is a question of fact to be resolved by the factfinder. *United States v. Castellano*, 72 M.J. 217, 218-19 (C.A.A.F. 2013) (citing *In re Winship*, 397 U.S. 358, 364 (1970), and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Prior to trial and consistent with this Court's decision in *Goings*, the military judge emailed counsel from both parties asking what aggravating circumstance the Government intended to prove to establish that the charged conduct was indecent under Article 134, UCMJ. The Government responded that several aggravating circumstances applied, including that the acts took place in Appellee's barracks room, and that the conduct was service discrediting. A few days later, Appellee filed a motion to dismiss the specification at issue in this appeal for failure to state an offense. In that motion, Appellee argued that his "alleged conduct with the doll [was] entirely a private sexual act, specifically masturbation with a doll, and does not meet the required aggravation. . . . In the absence of an aggravating circumstance, private sexual activity including

---

[6] Our predecessor court's holding in *Snyder* long predates the Supreme Court's holding in *Lawrence* and was not based on any specific liberty interest guaranteed by the Constitution. *See Snyder*, 1 C.M.A. at 426, 4 C.M.R. at 18. Thus, whether or not Appellee's conduct was protected under *Lawrence*, it still qualifies as "private consensual sexual activity" that cannot be punished as indecent conduct under Article 134, UCMJ, unless the Government proves an aggravating circumstance. Although the AFCCA concluded that Appellee's conduct was protected by *Lawrence*, the requirement for the Government to prove an aggravating factor would be the same either way. Accordingly, this Court need not decide whether Appellee had a constitutionally protected liberty interest to engage in the charged conduct to review the AFCCA's factual sufficiency determination.

masturbation is not punishable as indecent conduct." The military judge denied the motion the next day.

After the conclusion of the Government's case, Appellee made an oral motion under Rule for Courts-Martial 917 for a finding of not guilty to the relevant specification arguing that the Government failed to present evidence of the required aggravating circumstance. In response, the Government argued that four potential aggravating circumstances made Appellee's conduct criminally sanctionable under Article 134, UCMJ. After further discussion, the military judge concluded that the only potential aggravating factor raised by the evidence was whether Appellee "engaged in sexual acts with a sex doll with the physical characteristics of a female child in order to simulate sexual acts with a minor."

Consistent with this holding, the military judge gave the following instruction to the panel, without objection from either party:

> [Indecent conduct in violation of Article 134, UCMJ] is not intended to regulate wholly private consensual sexual activity. In the absence of an aggravating circumstance, private consensual sexual activity, including masturbation with or without any nonliving object, is not punishable as indecent conduct. The government has asserted the existence of the following aggravating circumstance to prove the alleged conduct is indecent: *the accused engaged in sexual acts with a sex doll with the physical characteristics of a female child, to simulate sexual acts with a minor*.

(Emphasis added.) This was the only aggravating circumstance presented to the panel.

Before the AFCCA, Appellee challenged the legal and factual sufficiency of his conviction. As part of its factual sufficiency review, the AFCCA concluded that it was not convinced that Appellee, when he was engaged in the charged conduct, was either pretending he was having sexual intercourse with a child or simulating sexual acts with a minor, and thus, there was no aggravating circumstance.

*Rocha III*, 2025 CCA LEXIS 10, at \*25-26 & n.15, 2025 WL 211261, at \*10 & n.15. In support of this conclusion, the AFCCA noted that Appellee disclaimed any sexual interest in children, and that he stated that he stopped his sexual conduct with the doll when the thought of it being a real person came to mind. The AFCCA also appeared to credit Appellee's explanation that he chose a small doll because he thought a larger doll would be bulky and hard to move in a small dorm room.

In addition to rejecting the specific aggravating circumstance presented to the panel, the AFCCA also considered and rejected the "other Government-asserted *Marcum* factors."[7] These included: (1) whether the doll was legal to possess; (2) whether the doll qualified as child pornography; (3) the absence of any dormitory regulations prohibiting Appellee's conduct; (4) whether Appellee's behavior tended to normalize sex between adults and children; (5) the potentially service discrediting nature of Appellee's conduct; (6) and the fact that the conduct charged occurred in a military barrack subject to inspection and regulation. Because the AFCCA did not find any aggravating circumstance beyond a reasonable doubt, it found Appellee's conviction to be factually insufficient.[8]

---

[7] In *Marcum*, this Court identified factors that—if present— would make otherwise constitutionally protected conduct under *Lawrence* criminally sanctionable under Article 134, UCMJ. 60 M.J. at 206-07. We presume, without deciding, that those factors would also qualify as aggravating circumstances under *Goings*, 72 M.J. at 204-05, that would make any private consensual sexual activity sanctionable under Article 134, UCMJ.

[8] The AFCCA also concluded that "the evidence does not support all the elements, including that [Appellee's] conduct was both indecent and, under the circumstances, of a nature to bring discredit upon the armed forces." It is not clear to what extent these additional grounds for finding Appellee's conviction to be factually insufficient were based on the AFCCA's conclusion that Appellee's conduct was constitutionally protected under *Lawrence*. Because the lack of an aggravating circumstance alone establishes a sufficient and independent basis for the AFCCA's

Review of the factual sufficiency of the evidence in a court-martial is a special power and duty that Congress conferred only on the Courts of Criminal Appeals. *Thompson*, 83 M.J. at 3. Because this Court lacks the authority to make its own findings of fact or to conduct its own factual sufficiency review, we cannot reassess the AFCCA's factual determinations. *Id.* at 4. Thus, whether the evidence is factually insufficient because the Government failed to prove an aggravating circumstance beyond a reasonable doubt is a determination "solely for the AFCCA to make." *Id.* at 5. Here, the AFCCA concluded that the Government failed to prove the existence of any aggravating circumstance beyond a reasonable doubt.

Our ability to review that determination is limited to examining whether the AFCCA applied incorrect legal principles. *Id.* at 4. As discussed above, the AFCCA correctly recognized that the Government was required to prove the presence of an aggravating circumstance to convict Appellee for his private consensual sexual activity under Article 134, UCMJ. *Goings*, 72 M.J. at 205. Because the AFCCA correctly applied this requirement, we find no misapplication of legal principles that would justify setting aside the AFCCA's determination that Appellee's conviction was factually insufficient.

### V. Conclusion

The judgment of the United States Air Force Court of Criminal Appeals is affirmed.

---

factual insufficiency determination, we need not consider the AFCCA's additional conclusions.

Judge MAGGS, concurring in part and in the judgment.

A general court-martial consisting of officer members found Appellee, Airman Zachary C. Rocha, guilty of one specification of indecent conduct in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2018). The specification alleged that Appellee:

> [d]id, within the continental United States, on divers occasions between on or about 24 April 2019 and on or about 20 May 2019, commit indecent conduct, to wit: engaging in sexual acts with a sex doll with the physical characteristics of a female child, and that said conduct was of a nature to bring discredit upon the armed forces.

The United States Air Force Court of Criminal Appeals (AFCCA), in its most recent opinion, set aside this finding for two reasons. *United States v. Rocha*, No. ACM 40134 (rem), 2025 CCA LEXIS 10, at *30-31, 2025 WL 211261, at *12 (A.F. Ct. Crim. App. Jan. 15, 2025) (unpublished). One reason was that Appellee "had a constitutionally protected liberty interest to privately engage in sexual activities with his doll." *Id*. at *4, 2025 WL 211261, at *2. The other reason was that the evidence was factually insufficient to prove "all the elements [of the offense], including that [Airman Rocha's] conduct was both indecent and, under the circumstances, of a nature to bring discredit upon the armed forces." *Id.* at *30, 2025 WL 211261, at *12.

As explained below, I am persuaded that the AFCCA's judgment setting aside the findings and sentence must be affirmed because of the AFCCA's largely unreviewable determination that the evidence was factually insufficient to sustain the findings. If the evidence is factually insufficient to prove the offense, then the constitutional question is moot. *Escambia Cnty. v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam) ("It is a well established principle governing the prudent exercise of . . . jurisdiction that normally [a court] will not decide a constitutional question if there is some other ground upon which to dispose of the case."). I therefore do not address the issue of whether Appellee's conduct was constitutionally protected.

Similarly, I do not answer the certified question about whether the AFCCA followed this Court's remand instructions in addressing the constitutional issue because this certified question is also moot.

For these reasons, I respectfully concur in Part IV of Judge Hardy's opinion (which makes Part IV the majority opinion) and in the judgment.

## I. The AFCCA's Factual Sufficiency Review

Under the applicable version of Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1) (2018), the AFCCA "may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as the [AFCCA] finds correct in law and fact and determines, on the basis of the entire record, should be approved."

Here, the AFCCA could affirm the finding that Appellee was guilty of indecent conduct only if the court was convinced beyond a reasonable doubt that the evidence proved (1) that Appellee had engaged in the conduct alleged in the specification; (2) that the conduct was indecent; and (3) that, under the circumstances, the conduct was of a nature to bring discredit upon the armed forces. *Manual for Courts-Martial, United States* pt. IV, para. 104.b.(1)-(3) (2019 ed.) (*MCM*) (listing the elements of the enumerated offense of indecent conduct).

After reviewing the record in this case, the AFCCA held that the evidence was factually insufficient to prove that Appellee's conduct was indecent and that it was of a nature to bring discredit upon the armed forces. *Rocha*, 2025 CCA LEXIS 10, at *30, 2025 WL 211261, at *12.

This Court may review the AFCCA's factual sufficiency determinations only for "the application of correct legal principles." *United States v. Thompson*, 83 M.J. 1, 4 (C.A.A.F. 2022) (internal quotation marks omitted) (citation omitted). Accordingly, this Court must affirm the AFCCA's judgment setting aside the finding and sentence if the AFCCA followed correct legal principles in deciding that the evidence was factually insufficient with respect to *either* the "service discrediting" element *or* the "indecent conduct" element. I am persuaded that, under this very

deferential standard, the AFCCA's conclusion that the evidence was factually insufficient must stand.

## A. The Service Discrediting Element

Reasonable people may disagree with the AFCCA's conclusion that the Government failed to prove that Appellee's conduct was service discrediting.[1] But the Government has not persuaded me that the AFCCA applied incorrect legal principles when it reached this decision. The AFCCA quoted the governing rule that conduct is service discrediting when it "has a tendency to bring the service into disrepute or which tends to lower it in public esteem." *Rocha*, 2025 CCA LEXIS 10, at *22, 2025 WL 211261, at *8 (quoting *MCM* pt. IV, para. 91.c.(3)). The AFCCA made no statement suggesting any different standard applies. This Court therefore must affirm the AFCCA's determination even if others looking at the evidence might have reached a different conclusion.

The Government disagrees, arguing that this Court may set aside the AFCCA's decision that the evidence was factually insufficient because "it seems probable that [the] AFCCA found Appellee's conduct not to be indecent or service discrediting *because* [the] AFCCA (incorrectly) believed the conduct was constitutionally protected." I am not persuaded by this argument because it rests solely on speculation.

The AFCCA's opinion does not state that constitutional principles influenced its conclusion that the evidence was

---

[1] The finding of guilty at trial indicates that at least three-fourths of the members of his court-martial, all of whom were experienced Air Force officers, concluded that Appellee's conduct was service discrediting. And when the case first came before the AFCCA, Senior Judge Posch also concluded that the Government had shown that Appellee's conduct was service discrediting, reasoning that "[Appellee's] furtive behavior is inferential evidence that a reasonable person would know that using [the doll] to simulate anal and vaginal intercourse with an actual child was service discrediting." *United States v. Rocha*, No. ACM 40134, 2022 CCA LEXIS 725, at *26, 2022 WL 17730741, at *10 (A.F. Ct. Crim. App. Dec. 16, 2022) (unpublished) (Posch, S.J., dissenting), *rev'd*, 84 M.J. 346 (C.A.A.F. 2024).

factually insufficient to prove the service discrediting element. On the contrary, the only link between the AFCCA's constitutional analysis and this element is the AFCCA's statement: "[E]ven considering *potential* discredit to the service, we have found that Appellee's conduct—masturbation, in solitude, in secret, and in private—should warrant the [constitutional] liberty protection" afforded by the Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558 (2003). *Rocha*, 2025 CCA LEXIS 10, at *28, 2025 WL 211261, at *11 (emphasis added). In this statement, the AFCCA is not saying that Appellee's conduct is not service discrediting because it is constitutionally protected. Instead, the AFCCA is saying that even if Appellee's conduct *had a potential to be service discrediting*, the conduct is still constitutionally protected under *Lawrence*.[2]

The Government also argues that we should remand the case because the "AFCCA did not explain specifically why it found that Appellee's behavior was not . . . service discrediting." I agree with the Government that the AFCCA offered no clear explanation for its conclusion that Appellee's conduct was not service discrediting other than quoting the applicable legal standard from the *MCM*. But this is not a proper reason for setting aside the AFCCA's decision. This Court has held that while it is "better practice" for a Court of Criminal Appeals (CCA) to explain its reasons for finding the evidence to be factually insufficient, "a CCA is not required to identify the basis for its action." *United States v. Nerad*, 69 M.J. 138, 147 (C.A.A.F. 2010).

### B. The Indecent Conduct Element

The AFCCA's holding that the evidence is factually insufficient to establish the service discrediting element is sufficient by itself to support its judgment that the finding and sentence must be set aside. However, I do agree with Judge Hardy's opinion, which affirms the AFCCA's decision that the evidence is factually insufficient to

---

[2] Given that the AFCCA held that the conduct was not service discrediting, this statement is dicta and this Court need not consider whether it is correct.

establish the "indecent conduct" element. I therefore concur in Part IV of Judge Hardy's opinion (which makes Part IV the majority opinion).

## II. Other Issues

The AFCCA concluded in its opinion that Appellee had a constitutionally protected liberty interest under *Lawrence* to engage in the charged conduct. Chief Judge Ohlson's dissenting opinion raises serious questions about whether the AFCCA's constitutional analysis is correct. However, because the AFCCA determined that the evidence was factually insufficient to prove the alleged offense, I am persuaded that the question whether Appellee's conduct is constitutionally protected is moot. I therefore would not answer it based on the principle that a court generally should not decide a constitutional issue when it can decide a case solely on statutory grounds. *Escambia Cnty.,* 466 U.S. at 51.

The Government has further argued that the AFCCA failed to adhere to this Court's remand instructions because it broadly concluded that Appellee had a liberty interest in "masturbation in private and in solitude," instead of answering the specific question posed by this Court: "[W]hether Appellee had a constitutionally protected liberty interest under *Lawrence v. Texas*, 539 U.S. 558 (2003), to privately engage in sexual activity with a childlike sex doll." I conclude that this question is also moot. The Court's remand instructions directed the AFCCA to "address any other issues previously raised by Appellee . . . that were mooted by [the AFCCA's] prior decision to overturn the conviction." One of those issues was whether the evidence was factually insufficient. *Rocha,* 2025 CCA LEXIS 10, at \*2, 2025 WL 211261, at \*1. As explained above, the AFCCA's decision that the evidence was factually insufficient to establish two elements of the offense is an independent and sufficient ground for affirming the judgment that the finding and sentence must be set aside.

## III. Conclusion

For these reasons, I concur in part and in the judgment.

Chief Judge OHLSON, with whom Judge SPARKS joins, dissenting.

Today a majority of this Court affirms the judgment of the United States Air Force Court of Criminal Appeals. By doing so, the majority lets stand the holding of the lower court that Appellee had *a constitutional right* while living in government quarters to insert his penis into the vaginal and anal openings of a sex doll—despite the fact that the evidence adduced at trial unequivocally demonstrated that this sex doll *looked like a child*.[1] This egregious result is not compelled by law, logic, or precedent. Therefore, I dissent.

## I. Factual Background

In order to comprehend the true nature of the lower court's holding, it is important to highlight certain facts that are either not discussed or not sufficiently acknowledged in either the lead opinion or the opinion of the Air Force court.

First, the trial evidence unequivocally demonstrated that this doll, which the accused ordered from overseas and then surreptitiously brought onto a military base, was a *sex* doll. It had oral, anal, and vaginal openings; it had a feature where the user could cause the doll to emit sexual moans; and the doll vibrated.

Second, this doll did not have the appearance of some blow-up gag gift from a novelty shop. It was made of

---

[1] The judges affirming the judgment of the Air Force court state that they "need not decide whether Appellee had a constitutionally protected liberty interest." *United States v. Rocha* (*Rocha IV*), __ M.J. __, __ n.6 (9 n.6) (C.A.A.F. 2026); *see also id.* at __ (1-2, 5) (Maggs, J., concurring in part and in the judgment). However, this stance does not change the fact that they have failed to reverse the decision of the Air Force court. As a result, the decision of the lower court still stands as binding precedent for the Air Force and the Space Force, and the lower court explicitly states in its opinion: "We find Appell[ee] had a constitutionally protected liberty interest to privately engage in sexual activities with his doll." *United States v. Rocha* (*Rocha III*), No. ACM 40134 (rem), 2025 CCA LEXIS 10, at *4, 2025 WL 211261, at *2 (A.F. Ct. Crim. App. Jan. 15, 2025) (unpublished).

*United States v. Rocha*, No. 25-0157/AF
Chief Judge OHLSON, with whom
Judge SPARKS joins, dissenting

silicone, mimicking skin, and was obtained from a website which "specializes in anatomically correct dolls." Further, Appellee admitted to investigators that he talked to this doll, showered with it, put baby powder on it, brushed its hair, slept with it, and gave it the name of a real girl he had known in middle school. Indeed, Appellee's first sergeant testified that when he went into Appellee's on-base living quarters to perform an inspection, "I thought there was a *real* child on the bed." (Emphasis added.)

Third, consistent with the first sergeant's testimony, this sex doll looked like a *child*. Every eyewitness who saw the doll said it looked like a child. Indeed, *Appellee himself* admitted to investigators that "I have, basically, what is a *child* sex doll," and observed that this fact was "kind of *obvious*." (Emphases added.) And importantly, after seeing the evidence *the trial judge made a finding of fact* that it was "a *childlike* doll" and that the doll had "the appearance of *a child*." (Emphases added.) Moreover, in convicting Appellee, the panel members (who inspected the doll) likewise agreed that it looked like a child.[2]

And fourth, Appellee did not just receive and possess this child sex doll. He admitted to investigators that on multiple occasions while living in dormitory-style military housing for enlisted airmen, he penetrated the vaginal and anal openings of this doll with his penis.[3] This conduct is

---

[2] The military judge instructed the panel members that in order to convict Appellee, they needed to find that "the accused engaged in sexual acts with a sex doll *with the physical characteristics of a female child*." (Emphasis added.)

[3] In an attempt to minimize this behavior, the Air Force court makes the eyebrow-raising assertion that Appellee—who, mind you, was a member of the armed forces of the United States— was interacting with this child sex doll "*mostly for his emotional support*, not for sexual gratification." *Rocha III*, 2025 CCA LEXIS 10, at *18 n.11, 2025 WL 211261, at *7 n.11 (emphasis added). And oddly, but perhaps tellingly, the lower court seeks to promote a defense argument that Appellee's sex doll (which, as noted, has anal and vaginal openings, moans, and vibrates) is little different from a Mattel "Skipper" doll, *id.* at *26, 2025 WL

*United States v. Rocha*, No. 25-0157/AF
Chief Judge OHLSON, with whom
Judge SPARKS joins, dissenting

what led to his conviction for indecent conduct—that is, for "engaging in sexual acts with a sex doll with the physical characteristics of a female child"—in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2018). Appellee's conviction was wholly justified in light of the facts cited above and the law discussed below.

## II. *Lawrence v. Texas*

In its decision reversing Appellee's conviction, the lower court relies heavily on the case of *Lawrence v. Texas*, 539 U.S. 558 (2003). In that case, the Supreme Court held that state laws criminalizing sodomy between consenting adults are unconstitutional. *Id.* at 578-79. Contrary to the position taken by the lower court, however, there is nothing in *Lawrence*—and importantly, nothing in any other precedent or any provision of the Constitution—that says a person has a *constitutional right* to stick his penis into a sex doll that looks like a *child*.

To be clear, I recognize and respect the precedents of the Supreme Court and of this Court holding that both civilians and members of our Armed Forces enjoy an expansive and robust right to privacy when it comes to sexual activity among consenting adults. In no way do I seek to curtail this liberty interest as previously defined and understood. But there is no precedent for the position adopted by the Air Force Court of Criminal Appeals that this right to privacy is so expansive as to protect the behavior for which Appellee was convicted. It is important to underscore that no federal court has ever held that *Lawrence* creates a constitutional right for a person to penetrate a child sex doll. And nothing in the language or logic of *Lawrence* serves to create such a right under the circumstances presented in the instant case.

## III. The Issue on Remand

Our Court previously ordered the Air Force court to examine on remand whether the constitutional liberty

---

211261, at *11—despite Appellee's concession to investigators that the doll was "not like Barbie."

*United States v. Rocha*, No. 25-0157/AF
Chief Judge OHLSON, with whom
Judge SPARKS joins, dissenting

interest identified in *Lawrence* applied to Appellee's conduct of "privately engag[ing] in sexual activity with a childlike sex doll." *United States v. Rocha* (*Rocha II*), 84 M.J. 346, 352 (C.A.A.F. 2024). However, the lower court instead chose to examine whether "Appell[ee's] conduct—masturbation, in solitude, in secret, and in private living quarters—should warrant the *Lawrence* liberty protection." *Rocha III*, 2025 CCA LEXIS 10, at \*17, 2025 WL 211261, at \*7.

Notice the legal legerdemain at play here: the Air Force Court of Criminal Appeals was *required* to address the question of whether Appellee's act of inserting his penis into a child sex doll was constitutionally protected, and yet that court instead *chose* to address the question of whether private masturbation is constitutionally protected. The lower court then reached the altogether unsurprising conclusion that the government has no right to regulate such intimately personal conduct when it is done "in solitude, in secret, and in private living quarters." *Id.*, 2025 WL 211261, at \*7. But that most assuredly was not the constitutional issue the Air Force court was *required* to examine. Indeed, the lead opinion itself concedes that the question addressed by the lower court "is a materially different one from" what this Court ordered the lower court to address on remand. *Rocha IV*, __ M.J. at __ (8). And yet, the lead opinion seems strangely unperturbed by this judicial transgression and conspicuously ignores Supreme Court precedent on this point. *See Briggs v. Pennsylvania R.R. Co.*, 334 U.S. 304, 306 (1948) (noting the longstanding rule that "an inferior court has no power or authority to deviate from the mandate issued by an appellate court"); *see also Sibbald v. United States*, 37 U.S. 488, 492 (1838) ("The inferior court is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. They cannot vary it, . . . review it upon any matter decided on appeal for error apparent; or intermeddle with it, further than to settle so much as has been remanded.").

The lead opinion wanly tries to explain away this discrepancy, averring that the lower court "answered the most

*United States v. Rocha*, No. 25-0157/AF
Chief Judge OHLSON, with whom
Judge SPARKS joins, dissenting

critical question asked by this Court," *Rocha IV*, __ M.J. at __ (8), when the lower court stated that "[Appellee] had a constitutionally protected liberty interest to privately engage in sexual activities with his doll," *id.* at __ (8) (internal quotation marks omitted) (quoting *Rocha III*, 2025 CCA LEXIS 10, at *4, 2025 WL 211261, at *2). But in truth, the lower court's conclusory statement did not "answer" this Court's mandate because it was predicated on the lower court's faulty (re)definition of the liberty interest in issue. Accordingly, this Court should have remanded this case once again to the Air Force court—to examine the *correct* constitutional issue and, as discussed below, to examine the correct constitutional issue *correctly*. And yet a majority of this Court has declined to take this necessary step.

## IV. *United States v. Marcum*

If the judges on the Air Force court had properly complied with our remand requirement and had correctly understood and applied *Lawrence* and our precedent in *United States v. Marcum*, they would have reached an entirely different conclusion here. 60 M.J. 198 (C.A.A.F. 2004). *Marcum* outlines a "tripartite framework for addressing *Lawrence* challenges within the military context," asking:

> First, was the conduct that the accused was found guilty of committing of a nature to bring it within the liberty interest identified by the Supreme Court? Second, did the conduct encompass any behavior or factors identified by the Supreme Court as outside the analysis in *Lawrence*? Third, are there additional factors relevant solely in the military environment that affect the nature and reach of the *Lawrence* liberty interest?

*United States v. Stirewalt*, 60 M.J. 297, 304 (C.A.A.F. 2004) (citation omitted) (internal quotation marks omitted) (quoting *Marcum*, 60 M.J. at 206-07).

### A. *Marcum* Prong One

The initial question under *Marcum* essentially asks if the sexual conduct at issue is *generally* encompassed by the Supreme Court's opinion in *Lawrence*. 60 M.J. at 206.

*United States v. Rocha*, No. 25-0157/AF
Chief Judge OHLSON, with whom
Judge SPARKS joins, dissenting

*Lawrence*—and this Court's *Marcum* progeny—indicate that private sexual acts are constitutionally protected unless there are specific circumstances withdrawing those acts from the scope of that protection. *Lawrence*, 539 U.S. at 578; *Marcum*, 60 M.J. at 206; *United States v. Goings*, 72 M.J. 202, 206-07 (C.A.A.F. 2013); *United States v. Castellano*, 72 M.J. 217, 221 (C.A.A.F. 2013). While some courts have narrowly construed *Lawrence* as being concerned with sexual intimacy *between individuals*, *see, e.g.*, *Cook v. Gates*, 528 F.3d 42, 56 (1st Cir. 2008), neither *Lawrence* nor logic provide a reason to protect private sexual activity between adults but not private sexual activity conducted alone. Each implicates the same root concerns with individual autonomy and privacy. *See Lawrence*, 539 U.S. at 562 ("Liberty protects the person from unwarranted government intrusions into a dwelling or other private places. In our tradition the State is not omnipresent in the home."); *Goings*, 72 M.J. at 206 ("No one disagrees that wholly private and consensual sexual activity, without more, falls within *Lawrence*."); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 744 (5th Cir. 2008) (framing *Lawrence* as involving "the individual's substantive due process right to engage in private intimate conduct of his or her choosing").

Consequently, the same want of a legitimate government interest in regulating sodomy (absent other factors) as provided for in *Lawrence* applies just as readily to a number of other sexual acts, including solo sexual activity (absent other factors). Thus, *Marcum*'s first prong—whether the "conduct falls within the liberty interest identified by the Supreme Court"—is satisfied here. *Stirewalt*, 60 M.J. at 304.

### B. *Marcum* Prong Two

With prong one answered in the affirmative, the analysis proceeds to *Marcum*'s second prong—whether the *specific* conduct at issue "encompass[es] behavior or factors outside the *Lawrence* analysis." *Id.*

This second prong looks at whether there are aggravating circumstances that give the government a legitimate basis for regulating the sexual activity at issue, thereby

*United States v. Rocha*, No. 25-0157/AF
Chief Judge OHLSON, with whom
Judge SPARKS joins, dissenting

withdrawing what would otherwise be protected conduct from the constitutional zone of privacy. *Marcum*, 60 M.J. at 205. The *Lawrence* opinion itself highlighted certain factors that should be considered, such as whether the sexual acts involved "minors," "persons who might be injured or coerced," or "public conduct or prostitution." 539 U.S. at 578. However, this list is non-exhaustive and merely provides *some* of the circumstances in which the government's interest in regulation may be heightened. *See, e.g.*, *Lowe v. Swanson*, 663 F.3d 258, 264 (6th Cir. 2011) (upholding incest ban in light of the state's "paramount concern [of] protecting the family from the destructive influence of intra-family, extra-marital sexual contact. This is an important state interest that the *Lawrence* Court did not invalidate").

Thus, "the door is held open for lower courts to address the scope and nature of the right identified in *Lawrence,* as well as its limitations, based on contexts and factors the Supreme Court may not have anticipated or chose not to address in *Lawrence*." *Marcum*, 60 M.J. at 205; *see also Rocha II*, 84 M.J. at 361 (Johnson, J., with whom Hardy, J., joined in part, dissenting) (noting "courts have upheld convictions for private sexual conduct where other aggravating factors involving animals and corpses were present," factors outside *Lawrence*'s text); *Lofton v. Sec'y of Dep't of Child. & Fam. Servs.*, 358 F.3d 804, 817 (11th Cir. 2004) (noting the "[Supreme] Court itself stressed the limited factual situation it was addressing in *Lawrence*").

Here, the relevant *Marcum* factor is that Appellee conducted his sexual acts *with a childlike sex doll*. Thus, the aggravating circumstance is the objective nature of the doll as a representation of a child, without any inquiry as to the subjective intent Appellee fostered while penetrating the child sex doll with his penis. Stated differently, the governmental interest in prohibiting the use of childlike sex dolls does not depend on the intent of the actor to simulate sex with a real child—nor does it depend on any other subjective belief or intent of the accused—in the same way that obscenity is not defined with respect to the individual's perception or purpose but rather the material's objective

*United States v. Rocha*, No. 25-0157/AF
Chief Judge OHLSON, with whom
Judge SPARKS joins, dissenting

nature. *Cf. United States v. Amirault*, 173 F.3d 28, 34 (1st Cir. 1999) (noting a focus on "a deviant's subjective response could turn innocuous images into pornography").

In this context, it is apparent that the lower court misunderstood and misapplied the law when it addressed the military judge's instructions to the panel. The military judge told the panel members that in order to convict Appellee they would need to find that "the accused engaged in sexual acts with a sex doll with the physical characteristics of a female child *to simulate sexual acts with a minor*." (Emphasis added.) However, this italicized phrase was not one of the elements of the offense and did not appear on the charge sheet, and it improperly injected a subjective component into the requirements for a conviction. The military judge's misidentification of the *Marcum* factor was thus legal error. *Castellano*, 72 M.J. at 219 n.6 (It is "the military judge's duty to present the law and identify through appropriate instructions those facts or factors that may, if found by the trier of fact, place the conduct outside the liberty interest identified in *Lawrence* and recognized by *Marcum*.").

The Air Force Court of Criminal Appeals should have noted the error by the military judge but then concluded that this misstep was not prejudicial to Appellee because in defining the *Marcum* factor in this way, the military judge was placing a *higher* burden of proof *on the Government* than was actually required as a matter of law. *Rocha III*, 2025 CCA LEXIS 10, at *25, 2025 WL 211261, at *10. Stated differently, because the military judge instructed the panel members that the Government needed to show *both* the objective nature of the doll *and* Appellee's subjective intent when he penetrated that doll, the lower court should have recognized that by convicting Appellee, the panel members necessarily made a finding that *both* requirements were met. This distinguishes what occurred here from those situations where "a jury is instructed on alternative theories of guilt and returns a general verdict that may rest on a legally invalid theory." *Skilling v.*

*United States v. Rocha*, No. 25-0157/AF
Chief Judge OHLSON, with whom
Judge SPARKS joins, dissenting

*United States*, 561 U.S. 358, 414 (2010) (citing *Yates v. United States*, 354 U.S. 298 (1957)).

Nevertheless, the Air Force Court of Criminal Appeals used this error by the military judge as a springboard to attack the legitimacy of Appellee's conviction by proclaiming: "[W]e ourselves are not convinced [Appellee] was simulating acts with a minor." *Rocha III*, 2025 CCA LEXIS 10, at *25 n.15, 2025 WL 211261, at *10 n.15. But as just shown, this issue was irrelevant. Therefore, even standing alone this misunderstanding of the law by the lower court merits a remand of this case for further *proper* analysis.[4]

It also is clear that the lower court did not find Appellee's conviction factually insufficient on the basis of the objective nature of the doll. First, as acknowledged in the lead opinion, the lower court "expressly declined to decide whether or not the sex doll was 'childlike.' " *Rocha IV*, __ M.J. at __ n.5 (7 n.5). Instead, the lower court prevaricated by stating it was "not convinced the only rational interpretation of the evidence in this case is that the doll resembled a child and not a young-looking adult." *Rocha III*, 2025 CCA LEXIS 10, at *25, 2025 WL 211261, at *10.[5]

---

[4] The lower court's misunderstanding of this area of the law is further demonstrated by a hypothetical it poses in an attempt to justify its decision in this case. Specifically, the lower court asks: "What if the doll looked like an adult, but the user fantasized that it was a child?" *Rocha III*, 2025 CCA LEXIS 10, at *26, 2025 WL 211261, at *11. This query appears to be an attempt to convince the reader that the government must not be allowed to regulate a person's sexual activity with a child sex doll because then the government will also be allowed to regulate a person's sexual fantasies. However, that line of reasoning is transparently fatuous. As explained above, it is objective actions and not subjective thoughts that are at play here, and hypotheticals that revolve around the latter point are both pointless and misleading.

[5] Because the objective nature of the doll was central to the charged conduct and *Marcum* factor, the lead opinion is mistaken when it states that "childlike" constitutes "a subjective designation that carries no specific legal significance." *Rocha IV*, __ M.J. at __ (8). And although it states that it has "no doubt

*United States v. Rocha*, No. 25-0157/AF
Chief Judge OHLSON, with whom
Judge SPARKS joins, dissenting

The equivocal nature of this pronouncement is striking. The lower court does *not* say that it has *concluded* that the sex doll looked like "a young-looking adult" rather than a child and that it has therefore concluded that the second *Marcum* factor has not been met here. Rather, the lower court merely says that it is "*not convinced* the *only* rational interpretation" was that the doll looked like a child—but it does not state which of these various "rational interpretation[s]" it actually has adopted as being factually supported by the record of trial. *Id.*, 2025 WL 211261, at *10 (emphases added). The ambiguity of this key point calls out for a remand by this Court in order to gain clarity regarding this critical determination. And I submit that upon remand the Air Force court would be hard-pressed indeed to squarely state that the sex doll in this case looked like a "young-looking adult" when *all* the evidence at trial demonstrated the opposite. As noted at the outset of this opinion, every eyewitness who saw the doll said it looked like a child, the trial judge made a factual finding that the doll looked like a child, and *Appellee himself* admitted to investigators that "I have, basically, what is a *child* sex doll," observing that this fact was "kind of *obvious.*" (Emphases added.) And it must not go uncommented upon that when the Government made a motion to show the actual sex doll to the judges on the Air Force court so that they could see for themselves that it looked like a child, the members of that court denied the motion. This denial further brings into question the basis upon which the lower court, on remand, could justify a conclusion that the sex doll looked like a "young-looking adult."

Second, there is a technical point that needs to be made here. The lower court's pronouncement that it was "not convinced the only rational interpretation of the evidence in this case was that the doll resembled a child and not a

---

that the [Air Force court] had an accurate understanding of the doll's objective appearance," *id.*, this does not demonstrate that the lower court made any express finding that the doll was *not* childlike, as would be necessary to find factual insufficiency for failure to prove the (correct) *Marcum* factor.

*United States v. Rocha*, No. 25-0157/AF
Chief Judge OHLSON, with whom
Judge SPARKS joins, dissenting

young-looking adult" was stated in the context of an analysis of whether Appellee "was pretending he was having sexual intercourse with a child." *Rocha III*, 2025 CCA LEXIS 10, at *25-26, 2025 WL 211261, at *10. By placing their markedly equivocal observation in the context of the *subjective* question of what may have been going through the mind of Appellee when he penetrated the sex doll with his penis, this sentence did not constitute factfinding by the lower court regarding the *objective* characteristics of the doll (i.e., whether the proverbial "reasonable person" would objectively conclude that the sex doll looked like a child or a young looking adult). As a result, the lower court's statement should in no way serve as a basis to affirm in this case.

### C. *Marcum* Prong Three

Although the Air Force court's legal errors in regard to its analysis of the second *Marcum* factor are sufficient in themselves to mandate a further remand here, it is important to note that the lower court also erred in its analysis of *Marcum* prong three. This prong looks at whether unique considerations of the military environment militate in favor of limiting the privacy rights that individuals hold in the civilian world. *Marcum*, 60 M.J. at 207-08. The Air Force court did recognize that "a determination that the conduct was of a nature to bring discredit upon the armed forces could satisfy the *Marcum* factors." *Rocha III,* 2025 CCA LEXIS 10, at *27, 2025 WL 211261, at *11 (citing *Goings*, 72 M.J. at 207). However, in balancing the interests of the Government and Appellee, the lower court then wrongly weighed whether the "potential discredit to the service" was outweighed by Appellee's privacy interest in being able to masturbate "in solitude, in secret, and in private." *Id.* at *28, at *28, 2025 WL 211261, at *11.

Though it is true that private masturbation by a member of the military without some aggravating circumstance would not discredit the armed services, the Air Force court's sanitized version of what actually happened in this case flagrantly ignores the childlike nature of the sex doll which Appellee used during his sexual activity. In other

*United States v. Rocha*, No. 25-0157/AF
Chief Judge OHLSON, with whom
Judge SPARKS joins, dissenting

words, the lower court's analysis and conclusion proceeded from an incorrect definition of the Government's interests here. It is universally acknowledged that conduct by members of the Armed Forces may be service discrediting depending on "(1) the time, (2) the place, (3) the circumstances, and (4) the purpose for" an act, but a proper analysis of this issue can only proceed from a legitimate characterization of the true nature of the underlying act. *United States v. Guerrero*, 33 M.J. 295, 298 (C.M.A. 1991).

Further, in deciding whether his conduct was service discrediting, I note that the Air Force court did not even acknowledge Appellee's *own admission* that "it's obvious it's not good to have something like [a child sex doll] on a military base." At trial the panel members found Appellee's conduct to be service discrediting, and the lower court's decision to overturn this determination was groundless.

The Air Force court's determination regarding the proper balancing of the opposing interests in this case arguably constituted a legal determination, and as such, legal error. However, even if construed as a factual determination, the lower court's analysis was intertwined with a mischaracterization of the *Lawrence* interest and the conduct at issue, and consequently, reversal and remand of this case is not only warranted but required.

It is evident that the Air Force Court of Criminal Appeals failed to comply with this Court's mandate on remand and failed to apply correct legal and constitutional principles when reviewing Appellee's conviction. Therefore, this Court clearly should have vacated the lower court's decision and remanded the case once again for a *proper* factual sufficiency review.

## V. Conclusion

The Court's affirmance of the lower court reverberates beyond this particular case. It must be underscored that the Air Force Court of Criminal Appeals centers its decision in this case on constitutional grounds and glibly declares: "At most, the conduct involves a lifelike sex doll that may resemble a child." *Rocha III*, 2025 CCA LEXIS

*United States v. Rocha*, No. 25-0157/AF
Chief Judge OHLSON, with whom
Judge SPARKS joins, dissenting

10, at \*30, 2025 WL 211261, at \*12. By doing so, the judges of the lower court bring into question not only their own probity but also the constitutionality of any statute criminalizing the possession of child sex dolls, such as those already enacted in eleven states.[6] At the very least, any general order on this topic applicable to Air Force and Space Force personnel will be unenforceable as long as *Rocha* remains intact.

And so, hundreds of thousands of servicemembers who serve in the Air Force and Space Force are now authorized to penetrate with their penis the anal and vaginal openings of child sex dolls while on base and at their leisure. This result is indefensible. Moreover, one can surmise that in the civilian world, internet forums and chat rooms dedicated to such topics will boast that even the military justice system now recognizes that the unabashed sexualization of children is acceptable. And thus—to use a phrase coined by the eminent social theorist and United States Senator Daniel Patrick Moynihan—this decision of the Air Force Court of Criminal Appeals will regrettably ensure that the process of "defining deviancy down" will proceed apace.[7]

The decision by a majority of this Court to gloss over the reversible errors of the Air Force Court of Criminal Appeals

---

[6] *See* Ariz. Rev. Stat. Ann. § 13-1429 (2023); Fla. Stat. § 847.011(5) (2022); Haw. Rev. Stat. § 712-1216.5 (2021); Ky. Rev. Stat. Ann. § 531.365 (2024); La. Rev. Stat. Ann. § 14:81.6 (2024); N.C. Gen. Stat. § 14-190.17A (2024); S.D. Codified Laws § 22-24A-3.1 (2021); Tenn. Code Ann. § 39-17-910 (2019); Tex. Penal Code Ann. § 43.231 (West 2025); Utah Code Ann. § 76-5c-209 (West 2025); Wis. Stat. § 944.19 (2024). Legislation has also been introduced in Congress and state legislatures. *See* CREEPER Act 2.0, H.R. 1186, 119th Cong. (2025); H.R. 1647, 2025 Leg., Reg. Sess. (Pa. 2025).

[7] In a famous essay entitled "Defining Deviancy Down," Senator Moynihan chronicled the normalization of, and desensitization to, behaviors previously considered aberrant. Daniel Patrick Moynihan, *Defining Deviancy Down*, 62 *Am. Scholar* 17 (1993).

*United States v. Rocha*, No. 25-0157/AF
Chief Judge OHLSON, with whom
Judge SPARKS joins, dissenting

and decline to vacate the lower court's opinion and remand the case for a proper analysis consistent with the relevant facts and the applicable law is profoundly puzzling and flatly wrong. Therefore, I dissent.